UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DALE ORLOWSKE,

    Plaintiff,

        v.                                 Civil Action No. 16-383 (JEB)

SYLVIA MATHEWS BURWELL,

    Defendant.

## MEMORANDUM OPINION

Plaintiff Dale Orlowske, who worked for the Department of Health and Human Services, brought this suit claiming a fourteen-day suspension he received constituted retaliation under Title VII. Yes, that's right: this federal case concerns nothing more than two weeks without pay. In now seeking summary judgment before even filing its Answer, HHS asserts that it is undisputed that the agency suspended Orlowske because he forged parking-permission slips for a contractor, not in retaliation for an age-discrimination complaint. Thin as Plaintiff's case appears, since this summary-judgment Motion is nonetheless premature, the Court will deny it.

**I.     Background**

The facts relevant to this Motion are straightforward; where there is conflict, the Court credits Plaintiff's version as he is the nonmovant. In addition, though the Complaint itself is not evidence, it will be cited for some background information.

In July 2013, Orlowske joined HHS as a GS-14 Senior Intelligence Operations Specialist. See ECF No. 1 (Complaint), ¶¶ 1, 9. When his supervisor, Ricky Hill, left a year later, Orlowske applied for his GS-15 position. Id., ¶¶ 12-13; see ECF No. 8-1 (Defendant's Statement of Undisputed Facts). But HHS instead gave the nod to another man, Daniel Chapple, nearly two

1

decades Orlowske's junior. Id. Believing this unjust, on October 14, 2014, Orlowske filed a complaint with HHS, alleging that he had been discriminated against in this selection process because of his age. See ECF No. 8, Exh. 2 (EEO Complaint).

Around the same time, Chapple issued performance plans for his new subordinates. See ECF No. 8, Exh. 8 (Affidavit of Daniel Chapple) at 7-8. Miffed again, Orlowske told Chapple that he thought his plan was designed to punish him for the complaint. See DSUF, ¶ 6. Because the complaint did not allege any wrongdoing on Chapple's part, however, this was the first that he had heard of it. Id. A month later, the two had a further spat over Orlowske's use of unscheduled leave in inclement weather. See Compl., ¶¶ 22-24.

Then, in December 2014, a periodic facilities audit showed that Orlowske had forged parking-pass forms for a contractor, Ronald Nesbitt, five times. See Chapple Aff. at 5. When the auditor alerted Chapple to this, he sought advice from Human Resources on an appropriate sanction. See ECF No. 8, Exh. 18 (Affidavit of Catherine Sanders) at 2-3. That department instructed him that anything from a reprimand to a fourteen-day suspension would be justified. Id. at 3. Chapple, accordingly, informed Orlowske on December 23 that he was proposing a fourteen-day suspension without pay due to the severity and frequency of the parking-pass violations. See ECF No. 8, Exh. 13 (Memorandum from Chapple to Orlowske). Chapple's supervisor, Kory Whalen, later upheld the suspension. See ECF No. 8, Exh. 19 (Affidavit of Kory Whalen) at 4.

After exhausting his administrative remedies, Orlowske filed this action under Title VII, asserting that the suspension was retaliation for his earlier complaint. See Compl., ¶¶ 5-6. Before even answering, HHS immediately moved for summary judgment on the grounds that Orlowske had failed to make out a *prima facie* case and, alternatively, that he could not rebut the

agency's legitimate reason for imposing the suspension – *i.e.*, the parking shenanigans. See ECF No. 8 (Motion for Summary Judgment) at 9-11. In opposition, Orlowske largely concedes that he has not yet presented evidence to show that HHS's proffered reason was actually a pretext for retaliation, but he further asserts that he can correct this deficiency through discovery. See ECF No. 11 (Response) at 2-3. More specifically, he relies on Federal Rule of Civil Procedure 56(d) to argue that the Motion is premature. See ECF No. 11-1 (Rule 56(d) Affidavit).

## II.   Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, Inc., 477 U.S. at 248. A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, Inc., 477 U.S. at 248.

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc., v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987). When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Summary judgment is premature, though, unless the parties have "had a full opportunity to conduct discovery." Liberty Lobby, 477 U.S. at 257; see also Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery."). A request by the nonmoving party for additional time to conduct discovery should thus be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." Berkeley v. Home Ins. Co., 68 F.3d 1409, 1414 (D.C. Cir. 1995) (internal quotation and citation omitted). To get this relief, the nonmoving party need only submit an affidavit, under Rule 56(d), which "state[s] with sufficient particularity . . . why discovery [is] necessary." Ikossi v. Dep't of Navy, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (internal quotation and citation omitted). This affidavit must "outline the particular facts he intends to discover and describe why those facts are necessary to the litigation[, as well as] . . . explain why he could not produce the facts in opposition to the motion." Convertino v. DOJ, 684 F.3d 93, 99-100 (D.C. Cir. 2012) (internal quotations and citations omitted).

### III.  Analysis

The Court must decide whether to terminate this case now or plow ahead to discovery. Unlike the Nationals' chance of making the playoffs this year, it's a close call. Plaintiff largely concedes that he has not produced evidence to show that Chapple's true reason for suspending him was to retaliate for his complaint, rather than to censure his parking transgressions. See ECF No. 11 (Response) at 2-4. This showing is essential to the survival of his claim. See Weber v.

4

Battista, 494 F.3d 179, 186 (D.C. Cir. 2007) (holding, under Title VII, a plaintiff alleging retaliation must show that government's legitimate, non-discriminatory reason for an employment action is false and that retaliation was real reason). Orlowske nevertheless asks the Court, pursuant to Rule 56(d), to stay the hatchet while he pursues this evidence through discovery. The government responds with affidavits from its own witnesses, indicating that the evidence Plaintiff seeks is unlikely to turn up. While Orlowske grasps some mighty thin reeds here, at this stage they hold.

The crux of Orlowske's retaliation claim is that Chapple used the parking-pass incident as an excuse to punish him for filing the age-discrimination complaint. He claims that Chapple wanted to do so because the complaint alleged, in essence, that Chapple did not deserve to get his GS-15 job. There is, however, scant evidence to support such an inference. The suspension took place over two months after Chapple first learned of the complaint. See ECF No. 8, Exh. 10 (Affidavit of Dale Orlowske) at 10-11; see also Taylor v. Solis, 571 F.3d 1313, 1322 (D.C. Cir. 2010) (holding no inference of retaliatory motive where alleged adverse action occurred two and one-half months after the filing of the discrimination suit). Chapple, moreover, was not himself accused of any wrongdoing in that complaint. See Orlowske Aff. at 9-11. In addition, the audit that uncovered the parking-pass fraud originated in the facilities department – not with Chapple – and the suspension fit within the table of penalties provided by Human Resources for the misconduct. See Sanders Aff. at 2-3.

To bolster his claim that the suspension was pretextual, Orlowske asserts that his former supervisor, Hill, instructed him to secure the parking passes for Nesbitt. See Orlowske Aff. at 11, 15. This fact alone, of course, is of little help to his retaliation claim unless Chapple knew of these instructions when he suspended him. See George v. Leavitt, 407 F.3d 405, 415 (D.C. Cir.

2005) (holding that question is not whether employee agrees with justification given, but whether employer "honestly and reasonably believed in those reasons"). Orlowske thinks that Hill will provide this missing link once he deposes him or, alternatively, that some supportive documentation might turn up. See Orlowske Aff. at 11, 15. HHS, however, responds in its Reply with affidavits from both Hill and Chapple that deny any such conversations ever took place. See ECF Nos. 15-1 (Supplemental Declaration of Daniel Chapple); 15-2 (Affidavit of Ricky Hill). Worse still for Orlowske, Hill further denies ever telling him to secure any passes for Nesbitt. See Hill Aff., ¶¶ 3-4.

Orlowske's second hope – that discovery might produce evidence that Chapple punished him more harshly than others, thus demonstrating pretext – fares little better. In Chapple's supplemental affidavit, he explains that he has imposed discipline four times as a supervisor. See Chapple Supp. Aff., ¶¶ 2-4. None of the other three incidents, as he describes them, compares to Orlowske's parking-pass misconduct. Id. As a result, it seems unlikely that discovery will uncover evidence tending to show that Orlowske's parking-pass issues were used as a pretext for retaliation.

The law, however, arguably gives Orlowske the opportunity to try. Here, he has asserted more than a vague desire to test the accuracy of the government's attestations. See Strang v. U.S. Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989) (holding discovery denial not abuse of discretion if request based solely on "desire to test and elaborate affiants' testimony") (internal quotation omitted). In his own sworn testimony, he claims that the parking-pass task was on his calendar since February 2014. See Orlowske Aff. at 10. If this is borne out in discovery, it could be used to impeach Hill's claim that he never asked Orlowske to secure the passes for Nesbitt. When pushed, Hill might even sing a different tune about his

6

conversations with Chapple. In addition, Chapple has motive to downplay his description of the other punishments he has handed out since becoming a supervisor. He is, after all, the alleged wrongdoer in this action. HHS, moreover, has attached no documentation about these other punishments to support Chapple's affidavit here. As a result, the Court is forced to conclude that discovery may turn up evidence that calls either or both of these attestations into question. For now, that is enough to let this possible lemon drive off the lot.

## IV.   Conclusion

As Defendant's Motion for Summary Judgment is premature, the Court will issue a contemporaneous Order denying it without prejudice.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 16, 2016